Eli O. Columbus – SBT #24028062
**WINSTEAD PC**
1201 Elm Street, Suite 5400
Dallas, Texas 75270
Phone: (214) 745-5400
Fax: (214) 745-5390

**ATTORNEY FOR LBUBS 2002-C7 SANDY LANE, LLC**

# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **FOUR BUCKS, LLC.,** | ) | |
| | ) | **Case No. 09-42629-DML-11** |
| **Debtor.** | ) | |

## OBJECTION TO DEBTOR'S MOTION FOR
## AUTHORITY TO USE CASH COLLATERAL

LBUBS 2002-C7 Sandy Lane, LLC (the "Lender") files this Objection (the "Objection") to the Debtor's Motion for Authority to Use Cash Collateral (the "Cash Collateral Motion") and in support thereof, respectfully states as follows:

### Preliminary Statement of Objections

1. As a preliminary matter, the funds Four Bucks, LLC ("the Debtor") seeks approval to use are rents that have been absolutely assigned to the Lender and are not property of the estate or cash collateral. The Debtor executed an Assignment of Rents (as defined below) and a Deed of Trust (as defined below) in which the Debtor "absolutely and unconditionally" assigned all rents from the Property (as defined below) to the Lender. Furthermore, the Indebtedness Documents (as defined below) expressly state that the assignment of rents is intended to constitute a "present, absolute assignment and not an assignment for additional security." Accordingly, the Lender holds title to all the rents and such amounts are not "cash

collateral" nor property of the Debtor's bankruptcy estate. Therefore, the Cash Collateral Motion should be denied.

2. Furthermore, this Court nor the Lender can determine the reasonableness of the proposed use of alleged "cash collateral" without a budget and other adequate financial information. The Debtor has not established that it is generating sufficient revenue to cover accruing utilities, maintenance, and property tax obligations, much less the Debtor's other operating and administrative expenses. The Debtor has also requested an expedited hearing on the Cash Collateral Motion, but has not disclosed how much cash collateral it is seeking to use on an interim basis prior to a final hearing pursuant to Federal Rule of Bankruptcy Procedure 4001(b)(2).

3. Finally, even if the Court finds that the current rents are property of the estate, the Lender holds a first priority properly perfected lien in such rents, and the Debtor has not offered sufficient adequate protection to the Lender for the use of its collateral. In the Cash Collateral Motion, the Debtor has proposed to make adequate protection payments in the amount of $11,000 per month. However, since the Debtor has failed to provide any financials or budget with which to support its Cash Collateral Motion, there is no way for the Lender or this Court to know if the proposed $11,000 per month adequately protects the Lender's secured interest in its liens on all the Collateral (as defined below). Furthermore, the Debtor's proposed cash collateral order is severely limited and should include more protections and limits related to the proposed use of alleged "cash collateral". For all of these reasons, the Cash Collateral Motion should be denied.

## Procedural and Factual Background

4. On May 6, 2009 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

5. On May 7, 2009, the Debtor filed the Cash Collateral Motion

6. On or about October 31, 2002 the Debtor executed and delivered a Note payable to Lehman Brothers Bank, FSB, a federal stock savings bank ("Lehman"), in the original principal amount of $2,000,000 (the "Note"). A true and correct copy of the Note is attached as **Exhibit A** and incorporated herein for all purposes. The Note was issued to finance the purchase of property located at 1525 Sandy Lane, Fort Worth, TX 76112 (the "Property").

7. In connection with the Note, the Debtor executed an Assignment of Leases and Rents dated October 31, 2002 (attached hereto as **Exhibit B**, the "Assignment of Rents"), a Deed of Trust, Assignment of Leases and Security Agreement dated October 31, 2002 (attached hereto as **Exhibit C**, the "Deed of Trust"), and various other loan and security documents (collectively with the Note, the Assignment of Rents and the Deed of Trust, the "Indebtedness Documents"). Copies of the UCC-1 Financing Statements filed with the secretary of state further evidencing the Lender's liens are also attached hereto as **Exhibit D**.

8. Through a serious of transactions, the Indebtedness Documents were transferred and assigned to LaSalle Bank National Association ("LaSalle") in its capacity as Trustee for the Registered Holders of LB-UBS Commercial Mortgage Trust 2002-C7, Commercial Mortgage Pass-Through Certificates, Series 2002-C7 (the "Trust"), to hold for the benefit of the Certificateholders of the Trust (the "Certificateholders").[1] The Certificateholders acquired

---

[1] Copies of the relative documents evidencing the assignment of the Indebtedness Documents to LaSalle are attached hereto as Exhibit E.

rights in the Note in addition to a number of other similar promissory notes pursuant to a transaction generally referred to in the industry as a commercial mortgage backed securities transaction. Bank of America, N.A., as successor by merger to LaSalle ("Bank of America"), became the owner and holder of the Indebtedness Documents. LNR Partners, Inc. ("LNR") was the special servicer of the Note. LNR was responsible for pursuing rights and remedies with respect to the Indebtedness Documents for and on behalf of the Trust and the Certificateholders.

9. The Debtor failed to make the required November 2008, December 2008 and January 2009 payments on the Note and has not made any subsequent required payments. On January 23, 2009, Bank of America sent a notice of default to the Debtor giving the Debtor through January 30, 2009 to bring the Note payments current (the "Notice of Default"). The Debtor failed to cure the payment defaults. Accordingly, on February 10, 2009, all amounts due and owing pursuant to the terms of the Note were accelerated and LNR began the process of posting the Property for foreclosure. In anticipation of foreclosure, Bank of America transferred all of the Indebtedness Documents to the Lender.[2]

10. Pursuant to the Deed of Trust, the debt to the Lender is secured by valid, non-avoidable properly perfected first priority liens on substantially all of the Debtor's assets (as more particularly described in the Deed of Trust, the "Collateral"). As of the Petition Date, the current outstanding principal on the Note was approximately $1,835,167.75, not including accrued interest, fees, expenses, escrows and other charges due (the "Lender's Claim").

---

[2] Copies of the relative documents evidencing the assignment of the Indebtedness Documents to the Lender are attached hereto as Exhibit F.

11. In lieu of foreclosure, the Lender and the Debtor began negotiating an agreement regarding a sale of the Property. Lender procured a buyer for the Property and a letter of intent was signed. However, before a sale could be consummated, the Debtor filed for bankruptcy.

12. The Debtor has defaulted on the Note and interest, costs of collection, attorneys' fees and other associated costs and expenses continue to accrue on the Lender's Claim pursuant to the provisions of the Indebtedness Documents.

## Objections

A. **All Rents Generated From the Property Have Been Unconditionally and Absolutely Assigned to the Lender and Are Not Property of the Debtor's Bankruptcy Estate**

13. The cash collateral motion should be denied because the Debtor is improperly seeking authority to use funds that it has unconditionally and absolutely assigned to the Lender. The Assignment of Rents[3] provides:

> 1. <u>Assignment</u>. Borrower hereby absolutely and unconditionally assigns and grants to Lender the following property, rights, interests and estates, now owned, or hereafter acquired by Borrower:
> (a) Leases. All existing and future leases affecting the use, enjoyment, or occupancy of all or any part of that certain lot piece of land . . . and the right, title and interest of Borrower, its successors and assigns, therein and thereunder.
> (b) Other Leases and Agreements. All other leases and other agreements, whether or not in writing, affecting the use, enjoyment or occupancy of the Property or any portion thereof now or hereafter made . . . .
> (c) Rents. All rents, additional rents, revenues, income, issues and profits arising from the Lease and renewals and replacement thereof and any cash or security deposited in connection therewith and together with all rents, revenues, income, issues and profits (including all oil and gas or other mineral royalties and bonuses) from the use, enjoyment and occupancy of the Property whether paid or accruing before of after the filing by or against Borrower of any petition for relief under the Bankruptcy Code. . . .

---

[3] Capitalized terms in the description below are further defined in the Assignment of Rents.

*See* Exhibit B at pages 1-2. Additionally, the Assignment of Rents provides that the "assignment constitutes a present, absolute assignment . . . and not an assignment for additional security only." *See* Exhibit B at page 3.

14. An absolute assignment of rents transfers the right to rents to the assignee automatically and does not create a security interest. In *FDIC v. International Property Management, Inc.*, the United States Court of Appeals for the Fifth Circuit found the assignment of rents clause at issue to be an absolute assignment based on the unambiguous language of the assignment. *See FDIC v. International Property Management, Inc.*, 929 F.2d 1033 (5th Cir. 1991). The court concluded that parties to an assignment of rents can agree to an assignment of rents that operates to transfer the right to rents automatically upon the happening of a specified condition, and therefore, creates an "absolute assignment" rather than a security interest. *See id.* at 1035. *International Property Management* clearly stands for the proposition that parties can, if their intent is made clear and unambiguous in an assignment of rents, create an absolute assignment that transfers the right to rents automatically.

15. An absolute assignment of rents does not create a security interest in rents, but actually transfers title to rents and gives the Lender the right to receive rents. *See In re Village Properties, Ltd.*, 723 F.2d 441, 443 (5th Cir. 1984). Additionally, if the Lender has title to the rents when the borrower files bankruptcy, the rents are not property of the bankruptcy estate and are outside the jurisdiction of the Bankruptcy Court. *See In re Fry Road Associates*, 64 B.R. 808 (Bankr. W.D. Tex. 1986).

16. The Indebtedness Documents in this case clearly indicate the parties' intent that the assignment of rents to the Lender was unconditional, absolute, and not merely a security interest. Therefore, since it was clearly the intent of the parties to create an absolute assignment

of rents, title to the rents passed to the Lender, and the rents are not property of the bankruptcy estate subject to use by the Debtor. Accordingly, the Court should deny the relief requested in the Cash Collateral Motion.

**B.     The Debtor's Request to Use Cash Collateral Should be Denied Because the Debtor Has Not Provided Sufficient Evidence Regarding Revenue Capabilities**

17.     The Cash Collateral Motion should also be denied because the Debtor has not offered sufficient enough evidence showing that it can generate revenue to cover accruing liabilities including utilities, maintenance and property tax obligations.

18.     Furthermore, the Debtor has not provided a budget or other financial documents in support of the Cash Collateral Motion. Thus, this Court and other creditors can not sufficiently determine the reasonableness of the proposed use of "cash collateral".

**C.     Alternatively, the Debtor's Request to Use Cash Collateral Should be Denied Because the Debtor Cannot Provide Sufficient Adequate Protection**

19.     Even if this Court found that the rents generated from the Property were not absolutely assigned to Lender and are property of the estate, the Cash Collateral Motion should still be denied because the Debtor has not offered sufficient adequate protection to the Lender. To the extent rents are not found to be absolutely assigned to the Lender, the Lender still holds a valid, first priority, properly perfected security interest in rents. Accordingly, the Lender should be afforded adequate protection for the use of its collateral.

20.     In order to use the Lender's cash collateral over its objection, the Debtor has the burden of proving that the Lender is adequately protected. *See In re Quality Bev. Co., Inc.*, 181 B.R. 887, 896 (Bankr. S.D. Tex. 1995). While the Bankruptcy Code does not define the term "adequate protection," it does list three non-exclusive examples:

> When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided

by
> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
> (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
> (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. §361. As a result, while the question of adequate protection is a case specific determination, "its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process." *In re First South Sav. Assoc.*, 820 F.2d 700, 710 (5th Cir. 1987) (*quoting In re Beker Indus.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986).

21. Essentially, "adequate protection is designed to preserve the secured creditor's position at the time of the bankruptcy." *In re Dunes Casino Hotel*, 69 B.R. 784, 793 (Bankr. D.N.J. 1986). As the *Dunes* Court observed, relying on the legislative history to the Code:

> [Adequate protection] is not intended to be confined strictly to the constitutional protection required. The section, and the concept of adequate protection, is based as much on policy grounds as on constitutional grounds. Secured creditors should not be deprived of the benefit of their bargain. There may be situations in bankruptcy where giving a secured creditor an absolute right to his bargain may be impossible or seriously detrimental to the bankruptcy laws. Thus, this section recognizes the availability of alternate means of protecting a secured creditor's interests. Though the creditor might not receive his bargain in kind, the purpose of the section is to insure that the secured creditor receives in value essentially what he bargained for.

*Id.* at 793-94 (quoting Id. at 793-94 (quoting H.R. Rep. No. 595 at 339, 1978, *U.S. Code Cong. & Ad. News* at 5787, 6295); *see also Swedeland*, 16 F.3d 552, 567 (3d Cir. 1994) ("There, of course, is no doubt that the policy underlying Chapter 11 is quite important. Nevertheless, Congress did not contemplate that a creditor could find its priority position eroded and, as

compensation for the erosion, be offered an opportunity to recoup dependent upon the success of a business with inherently risky prospects.").

22. Adequate protection seeks "to insure that the creditor receives the value for which he bargained prebankruptcy,"(s*ee Resolution Trust Corp. v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Corp.*), 16 F.3d 552, 564 (3d Cir. 1994) (*quoting In re O'Connor,* 808 F.3d 1393, 1396 (10th Cir. 1987) and its goal is to "safeguard the secured creditor from diminution in the value of its interest during the Chapter 11 reorganization." *See In re 495 Central Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992); *In re Swedeland*, 16 F.3d at 564 ("In other words, the proposal should provide the pre-petition secured creditor with the same level of protection it would have had if there had not been post-petition superpriority financing."). In considering if a creditor is adequately protected, Courts consider "the nature of the creditor's interest in the property, the potential harm to the creditor as a result of the property's decline in value and the method of protection." *In re Braniff Airways*, 783 F.2d 1283, 1286 (5th Cir. 1996).

23. The Debtor has failed to demonstrate, on a number of levels, that the Lender can be adequately protected. Although the Debtor has proposed to pay the Lender $11,000 per month, the Lender has no way of knowing whether this payment adequately protects its secured interest, as the Debtor has failed to provide any financial statements or even a budget in support of the Cash Collateral Motion.

24. Furthermore, the proposed cash collateral order that the Debtor has submitted is severely limited. At the very minimum, any order permitting the use of the Lender's cash collateral in these circumstances should provide:

(1) limited use of cash collateral in accordance with an attached budget;

(2) that the Lender be granted senior/first priority replacement liens;

(3) that the Debtor be required to segregate and account for all cash collateral in a "DIP" account and provide weekly cash reports to the Lender;

(4) that the Lender be granted 507(b) claims to the extent adequate protection is still needed.

The requirement of adequate protection is mandatory, and the Debtor has the burden of proof on this issue. *See* 11 U.S.C. §363(o).

**WHEREFORE,** the Lender respectfully request that the Court deny the relief requested in the Cash Collateral Motion. The Lender also requests general relief.

**DATED** this 12th day of May, 2009.

    Respectfully submitted,
    **WINSTEAD PC**
    5400 Renaissance Tower
    1201 Elm Street
    Dallas, Texas 75270-2199
    (214) 745-5400
    (214) 745-5390 (Facsimile)

    By: */s/ Eli O. Columbus*
        Eli O. Columbus – SBT #24028062

    **ATTORNEY FOR LBUBS 2002-C7 SANDY LANE, LLC**

# CERTIFICATE OF SERVICE

    I hereby certify that the foregoing has been served upon the parties listed below by first class United States mail, postage prepaid, this 12th day of May, 2009. Additionally, this document was served via electronic mail to the parties entitled to electronic service pursuant to the ECF procedures in this District.

        Areya Holder
        LAW OFFICE OF AREYA HOLDER, P.C.
        800 West Airport Freeway, Suite 540
        Irving, TX 75062

        B. Scot Pierce
        BRACKET & ELLIS, P.C.
        100 Main Street
        Fort Worth, TX 76102

        U.S. Trustee
        1100 Commerce Street
        Room 976
        Dallas, TX 75242-1496

        */s/ Eli O. Columbus*
        Eli O. Columbus

Dallas_1\5369302\3
48756-11 5/12/2009