Areya E. Holder
State Bar No. 24002303
LAW OFFICE OF AREYA HOLDER, P.C.
800 West Airport Freeway, Suite 540
Irving, Texas 75062
(972) 438-8800 – Telephone
(972) 438-8825 – Telecopier
Email: areya@holderlawpc.com

**Proposed Counsel for Four Bucks, LLC**
**Debtor and Debtor-in-Possession**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| FOUR BUCKS, LLC | § | CASE NO. 09-42629-DML |
| | § | |
| | § | |
| Debtor | § | Chapter 11 |
| | § | |

**BRIEF IN OPPOSITION TO LBUBS 2002-C7 SANDY LANE, LLC'S
CONTENTION REGARDINGF ABSOLUTE AND UNCONDITIONAL
ASSIGNMENT OF LEASES AND RENTS**

TO THE HONORABLE,
UNITED STATES BANKRUPTCY JUDGE:

Comes now Four Bucks, LLC, Debtor and Debtor-in-Possession, and files this Brief in Opposition to the Contention of LBUBS 2002-C7 Sandy Lane, LLC (the "Lender") Regarding the alleged "Absolute" and "Unconditional" Assignment of Leases and Rents and in support thereof would respectfully show as follows:

**I. BACKGROUND**

1. On or about October 31, 2002, Four Bucks, LLC entered into an agreement with the Lender (by and through its prior assignors) to partially fund the purchase of an apartment complex located at 1525 Sandy Lane, Fort Worth, Texas 76112 ("Sandy Oaks Apartments" or the "Property").

2. The Property was purchased from an unrelated third party for $3,500,000.00. The principal, by and through its principal, Richard Buck, invested a cash down payment of $1,500,000.00, and $2,000,000.00 was financed by the Lender.

3. The essential loan documents (as defined within those documents) with the Lender consist of (i) Promissory Note, (ii) Assignment of Leases and Rents and (iii) Deed of Trust, Assignment of Leases and Security Agreement.

4. From 2002 – 2007, Sandy Oaks apartments operated profitably and efficiently by and through the efforts of Mr. Buck. However, in 2008, Mr. Buck's son became embroiled in a significant legal battle, and Mr. Buck's efforts and attention were diverted to his son's legal issues. Unfortunately, in Mr. Buck's absence, the management in place at Sandy Oaks made numerous bad decisions regarding the selection of tenants, expenditures and general maintenance and upkeep on the Property. Additionally, Mr. Buck has recently discovered that at least one of his employees was stealing from the Debtor during this time.

5. Because of this poor management and the subsequent employee theft, Debtor fell behind on its payments to both secured and unsecured creditors. Mr. Buck, in reaction to this stream of events, quickly began to explore several options as a means of addressing and/or restructuring the debts. Specifically, Mr. Buck began to explore a possible sale of the Property, and he also hired a new management team to come in and manage the property correctly and efficiently. However, a foreclosure sale was scheduled for May 5, 2009. Thus, in order to preserve and retain the ability to reorganize and/or sell the Property, Debtor filed on May 4, 2009, a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code.

6. On May 7, 2009, Debtor promptly filed a Motion for Authority to Use Cash Collateral, and on May 12, 2009, Lender filed its Response in Opposition. Specifically, Lender asserts that the rents referenced in Debtor's Motion for Authority to Use Cash Collateral were not property of the bankruptcy estate under 11 U.S.C. section 541 contending that the rents had been "absolutely" or "unconditionally" assigned to the Lender. In the alternative and in the event the rents are not characterized as an absolute assignment, the Lender has stated by and through counsel that it simply wants to foreclose on the Property.

7. On May 20, 2009, a hearing was conducted wherein Debtor and the Lender agreed to a 30 day Interim Order on the use of cash collateral with a complete reservation of rights regarding the issue of assignment of rents and a requirement for the Debtor to submit a weekly budget to the Lender and its counsel for their review of the Debtor's expenditures. Additionally, as part of the Order, the Court requested counsel for the Debtor and the Lender to submit briefs on the Lender's contention of the "absolute" assignment of rents.

## II. ARGUMENT

**A. The language contained in the Promissory Note contemplates the Assignment of Leases and Rents is security for the Promissory Note.**

8. Texas courts recognize two types of assignment of rents, collateral assignments (security interest) and absolute assignments. *In re Allen*, 357 B.R. 103, 108 (Bankr. S.D. Tex. 2006). In order to determine if an assignment of rents clause creates an absolute assignment or a collateral assignment depends on the intent of the parties. *Taylor v. Brennan*, 621 S.W.2d 592 (Tex.1981); see also *FDIC v. International Property Management, Inc.*, 929 F.2d 1033 (5th Cir. 1991). In order to determine the intent of the

parties, a court must look at all of the documents executed in concert including the Promissory Note, Security Agreement and Assignment of Leases and Rents. *Taylor* at 594. "Because an absolute assignment generally is not intended by the parties, Texas, for public policy reasons, requires especially clear evidence that the parties intended to create such an assignment. If the assignment contains words such as 'security' or 'pledge', or if it requires some action by the mortgagee after default to secure the rents, the clause will not be construed as an absolute assignment." *FDIC* at 1036. In the instant case, paragraph 6 on page 7 of the Promissory Note is titled "Security". Sentence 1 of paragraph 6 states "[t]his Note is *secured* by the Security Instrument and the other Loan Documents". *Emphasis added.* "Loan Documents" is then defined on page 1 of the Promissory Note as "[l]oan Documents shall mean this Note, the Security Instrument, and any other documents or instruments which now or shall hereafter wholly or partially secure or guarantee payment of this note or which have otherwise been executed by Borrower and/or any other person in connection with the Loan". This wording includes any document that either *secures* <u>or</u> *guarantees* payment in whole or in part. While Lender may argue the Assignment of Leases and Rent does not secure payment, the Assignment of Leases and Rent certainly operates as a guarantee for payment on the Promissory Note. Further, it is unlikely that Lender could successfully posit that the Assignment of Rents document was not part of the "Loan Documents" as all of these documents (the Promissory Note, the Security Agreement and Deed of Trust, and the Assignment of Leases and Rents) were executed contemporaneously and in consideration for the aforementioned loan. Thus, the plain language of the Promissory Note appears to contemplate that the intent of the parties in the Promissory Note was to create a security

interest as specifically stated in sentence 1 of paragraph 6 of the Promissory Note that is secured by all of the Loan Documents, including the Assignment of Leases and Rents.

**B. The language contained in the Assignment of Leases and Rents States the Desire or Intent of the Borrower is to Secure Payment of the Promissory Note.**

9. On the first page of the Assignment of Leases and Rents, the second paragraph under Recitals states "[b]orrower desires to **secure** the payment and performance of the Obligations as defined in Article 2 of the Security Instrument (defined below)". *Emphasis added.* As recited in the Assignment of Leases and Rents, the Debtor's intention with reference to this document is to **secure** the payment and performance of the underlying obligation. Hence, this Assignment of Leases and Rents is additional security or collateral for the Promissory Note and was not contemplated by the Debtor to be an absolute, unconditional assignment of rents, even though that language is also included in the document. In *Cadle Co. v. Collin Creek*, the Texas Court of Appeals addressed the issue of whether such language that purports to convey an absolute and unconditional assignment is sufficient to in fact convey an absolute and unconditional assignment of rents. *Cadle Co. v. Collin Creek Phase II Assoc. Ltd.*, 998 S.W.2d 718 (Tex. App.–Texarkana 1999). "The court rejected Cadle's reliance on the words 'absolute assignment' and held that no magic word or phrase is determinative. *In re Allen* at 109 citing *Cadle* at 723. In construing the written contract or contracts, the Court's duty is to ascertain the true intentions of the parties as expressed in the instruments and examine the entire writing in an effort to reconcile and give effect to the various and competing provisions. *Cadle* at 723; *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). "When an assignment of rents states that it is given as 'further security', there is a strong

indication that it is intended as a mere security pledge." *Cadle* at 722 citing *Taylor v. Brennan*, 621 S.W.2d at 594. Here, the recital on the first page of the assignment states that the Borrower's desire is to **secure** payment of the obligations. Further, on page 42 of the Deed of Trust and Security Agreement, paragraph 20.1 titled Assignment of Leases begins "To secure payment of the Obligations…….". This paragraph discusses the assignment of rents and leases at length, but clearly sets forth the assignment is for the purpose of **securing** payment of the Debtor's obligations. Thus, the written evidence of Borrower's intent or desire with respect to the Assignment of Rents is specifically contained in the Assignment of Leases and Rents and is further supported by the language in the Promissory Note, Deed of Trust and Security Agreement, all of which were drafted by the Lender. These Loan Documents then, when construed as a whole, indicate the true intention of the Lender and the Borrower was to create a collateral assignment and not an absolute, unconditional assignment.

    **C. Lender's Conduct and Behavior Prior and Subsequent to Default Further Demonstrates that the Intent of Both Parties was a Collateral Assignment and not an Absolute and Unconditional Assignment.**

    10. Curiously, even though Debtor was in default for several months prior to the foreclosure date, Lender never revoked the "license" to collect rents granted to Borrower. In fact, Lender has never behaved as if an absolute and unconditional assignment of rents was intended. For example, Lender has never required direct payment of the rents by the tenants. Instead all rents have always been collected by the Debtor and placed in its general operating account for the payment of obligations and expenses. Lender has never sought an appointment of a receiver to collect the rents or sent any other demand to the tenants regarding direct collection of rents by the Lender.

The rents were never required to be kept separate, e.g. in an escrow account or paid to a lock box. All income of the Debtor has consistently been placed in the Debtor's operating account or petty cash account where the rental income has been commingled with a signing bonus for oil and gas royalties, income from the laundry facilities and the vending machines. In sum, both Debtor and Lender have treated the Assignment of Leases and Rents as collateral for the Promissory Note. It would be inequitable for Lender to now take the position that the assignment is really an absolute and unconditional assignment when the documents that the Lender drafted indicate in various places to the contrary and contradict that very assertion. Debtor has invested significant capital into this Property, in the amount of $1,500,000.00, and is diligently attempting to restructure its obligations.

## Conclusion

11. In sum, the three Loan Documents, the (i) Promissory Note, (ii) Assignment of Leases and Rents and (iii) Deed of Trust, Assignment of Leases and Security Agreement, when read in concert create the reasonable interpretation and expectation that the intent of both the Debtor and the Lender was to create a collateral assignment of rents that created additional security for the Lender. All three of the Loan Documents contain verbiage either in the recitals or paragraphs and provisions that consistently use the term "secure" when referring to the Borrower's desire or purpose in executing the Loan Documents. As noted above, the Loan Documents were drafted by the Lender and are complex and detailed. It is not plausible that the Lender did not in fact intend for the rents to further secure the payment of the Promissory Note when the Lender drafted the very security language contained on the face of the Assignment of

Leases and Rents that states the Debtor or Borrower desires to **secure** payment and performance of the obligations. Further, the conduct and behavior of the Lender prior to and after default demonstrates that the Lender has operated from the perspective of a collateral assignment and not an absolute, unconditional assignment.

WHEREFORE, PREMISES CONSIDERED, Debtor respectfully request an Order of this Court holding that the Assignment of Leases and Rents dated October 31, 2002, between Debtor and the Lender is a collateral assignment and not an absolute, unconditional assignment and for such other and further relief, legal or equitable, special or general to which Debtor may show itself justly entitled.

Respectfully submitted the 29th day of May, 2009.

Respectfully submitted,

By: */s/ Areya Holder*
    Areya E. Holder
    State Bar No. 24002303

LAW OFFICE OF AREYA HOLDER, P.C.
800 Airport Freeway, Suite 540
Irving, Texas 75062
(972) 438-8800 – Telephone
(972) 438-8825 – Telecopier
areya@holderlawpc.com

PROPOSED COUNSEL FOR
FOUR BUCKS, LLC

## Certificate of Service

I hereby certify that on May 29, 2009, a true and correct copy of the above-referenced pleading was served via electronic notice and/or first class mail upon counsel for LBUBS 2002-C7 Sandy Lane, LLC, the Office of the United States Trustee and all creditors that have entered a Notice of Appearance.

                                                     */s/ Areya Holder*
                                                     Areya E. Holder