

**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed June 29, 2009            **United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| IN RE § | |
| § | CASE NO.: 09-42629 |
| FOUR BUCKS, LLC, § | |
| § | CHAPTER 11 |
| DEBTOR. § | |

### MEMORANDUM OPINION

Before the court is the *Motion for Authority to Use Cash Collateral* (the "<u>Motion</u>") filed by debtor Four Bucks, LLC ("<u>Debtor</u>"). In response to the Motion LBUBS 2002-C7 Sandy Lane, LLC (the "<u>Lender</u>") filed its *Objection to Debtor's Motion for Authority to Use Cash Collateral* (the "<u>Objection</u>"). The court held a hearing on the Motion on April 20, 2009 (the "<u>Hearing</u>"). At the Hearing the court heard argument from counsel for Debtor and counsel for the Lender. The court also admitted certain documents into evidence which are identified below as necessary.[1]

---

[1] At the conclusion of the Hearing the court requested briefs from the parties. Debtor filed its *Brief in Opposition to LBUBS 2002-C7 Sandy Lane, LLC's Contention Regarding Absolute and Unconditional*

This matter is subject to the court's core jurisdiction 28 U.S.C. §§ 1334(b) and 157(b)(2)(K) and (M). This memorandum opinion embodies the court's findings and conclusions. FED. R. BANKR. P. 7052 and 9014.

## I. Background

On May 4, 2009 (the "Petition Date"), Debtor initiated this voluntary chapter 11 bankruptcy case. Debtor continues to operate as debtor-in-possession. No official committee of unsecured creditors has been appointed.

Debtor operates an apartment complex (the "Property"), the units of which generate rent payments from tenants when occupied. Prior to the Petition Date Debtor had entered into a financing facility with the Lender[2] by which the Lender loaned Debtor $2,000,000 (the "Pre-Petition Loan"). In connection with the Pre-Petition Loan Debtor and the Lender executed the *Assignment of Leases and Rents* (the "Assignment"), the *Deed of Trust, Assignment of Leases and Security Agreement* (the "Deed of Trust"), and the *Promissory Note*.

Prior to the Petition Date Debtor defaulted by non-payment on the Pre-Petition Loan. The Lender accelerated the debt (as a result of the default). The outstanding balance due to the Lender is approximately $1,800,000.

## II. Issue

The Motion seeks to use the rents collected from the Property as cash collateral. The Lender objects to the use of rents as cash collateral, arguing that the rents have been absolutely assigned to the Lender in connection with the Pre-Petition Loan. Thus, according to the Lender,

---

*Assignment of Leases and Rents.* The Lender filed its *Brief in Support of LBUB 2002-C7 Sandy Land, LLC's Contention Regarding Absolute and Unconditional Assignment of Leases and Rents.* Briefing closed on June 5, 2009.

[2] The Objection and the Lender's brief identified various financial transactions between the Lender and various other third parties and successors which are not relevant to this discussion.

Debtor lost any interest in the rents prior to the Petition Date and cannot use the rents as cash collateral. Debtor argues that the Pre-Petition Loan created a security interest in the rents and therefore the rents can be used as cash collateral because Debtor retains an interest in them.

### III. Discussion

A precondition of a debtor in bankruptcy being permitted to use cash collateral pursuant to 11 U.S.C. § 363 is that the estate have an interest in the case such that it meet the definition of "cash collateral." 11 U.S.C. § 363(a).[3] In a bankruptcy context substantive property rights are typically determined by state law. *Butner v. United States*, 440 U.S. 48, 55 (1979) (holding that property interests are created and defined by state law); *In the Matter of Vill. Prop., Ltd.*, 723 F.2d 441, 442 (5th Cir. 1984) opining that bankruptcy courts must "turn to state law to determine whether and at what time a mortgagee has an interest in the rents." *Id*. at 445.

Texas law identifies two types of assignments regarding rents. *Taylor v. Brennan*, 621 S.W.2d 592, 594 (Tex. 1981). The first type is generally referred to as a "collateral assignment" which functions much like a traditional secured transaction. *801 Nolana, Inc. v. RTC Mortgage Trust 1994-S6*, 994 S.W.2d 751, 754 (Tex. App. – Corpus Christi 1997, reh'g denied). The second type is known as an "absolute assignment." An absolute assignment divests the assignor of any possessory right to the rents. *In re Allen*, 357 B.R. 103, 116 (Bankr. S.D. Tex. 2006).

In determining which type of assignment has been created courts will look first to the documents evidencing the assignment. *Taylor*, 621 S.W.2d at 594; *In re Fry Road Assocs.*, 64 B.R. 808, 809-10 (Bankr. W.D. Tex. 1986). To overcome the presumption that parties intended to create a collateral assignment, a party must show by "especially clear evidence" that an absolute assignment was the intent of the parties to the agreement. *F.D.I.C v. Int'l Prop. Mgmt.*,

---

[3] The debtor-in-possession acts as a trustee of its bankruptcy estate. The estate in turn is comprised of all rights, property and interests that the debtor possessed prior to filing bankruptcy. 11 U.S.C. § 541.

929 F.2d 1033, 1036 (5th Cir. 1991). Courts faced with such a determination of intent consider four indicia that would evidence such an intent.

1. A statement of intent to assign absolutely rights, interests, estates, or rents to the mortgagee, typically a lender, and that the assignment was intended to be presently effective. *International Property*, 959 F.2d at 1038; *801 Nolana*, 944 S.W.2d at 755.

2. A statement of obligation on the part of the mortgagor to collect and hold rent payments solely for the benefit of the mortgagee upon default. *Allen*, 357 B.R. at 111.

3. A clause eliminating any duty on the part of mortgagee to institute legal action in order to assume control of the property or the rents therefrom. *Cadle Co. v. Collin Creek Phase II Assocs., Ltd.*, 998 S.W.2d 718, 723 (Tex. App. –Texarkana 2006, no pet.).

4. A clause referencing the automatic transfer of rights, interests, estates, or rents upon a specified condition, normally a default. *International Property*, 959 F.2d at 1035; *801 Nolana*, 944 S.W.2d at 754.

Courts do not require all four of these indices to be present. Rather the presence of each individual element in an assignment can assist the court in determining whether the document language is "clear and unambiguous" that the parties' intent was to create an absolute assignment. *See International Property*, 959 F.2d at 1037.[4]

In this case, the Assignment and the Deed of Trust state affirmatively the intent of Debtor and the Lender to create an absolute, unconditional, and presently effective assignment of the rents. Section 2.1 of the Assignment states "this Assignment constitute[s] a present, absolute assignment…and not an assignment for additional security." Assignment at p. 3, ¶ 2.1. The Deed of Trust also contains similar indicia of an intent to create an absolute assignment. The Deed of Trust states "…[Debtor] hereby absolutely and unconditionally assigns and grants to Lender all rights to and interest in the Leases and other property…" Deed of Trust at p. 43, § 20.1. This same section provides for a revocable license in favor of Debtor to collect the rents.

---

[4] The court recognizes that situations may arise where outside facts or circumstances may overcome the inclusion of all four indicea in the relevant documents.

The Assignment states "Borrow shall hold the Rents and all sums received pursuant to any Lease Guaranty…in trust for the benefit of Lender…" Assignment p. 3, ¶ 2.1; Deed of Trust p. 43, § 20.1.  This license automatically is revoked upon default under the Deed of Trust or Assignment.  The Assignment further states "[u]pon or at any time after the occurrence of a default under this Assignment…the license granted to Borrower [under] this Assignment shall automatically be revoked…" Assignment p. 3, ¶ 3.1.  With similar language, the Deed of Trust states "…upon or at any time after the occurrence of an Event of Default or Default under the Assignment of Leases and Rents, the license granted to Borrower…shall be immediately revoked." Deed of Trust p. 43, § 20.1.  Finally, the Lender may exercise its remedies without instituting legal action.  Instead, upon and default the "Lender shall automatically be entitled to possession of all Rents and sums…" Assignment p.3, ¶ 2.1.  The Assignment states "…Lender may, at its option, without waiving such Default…either in person or by agent, nominee or attorney, with or without bringing any action or proceeding, or by a receiver appointed by a court, dispossess Borrower and its agents and servants from the Property." Assignment at p. 3, ¶ 3.1.  The Deed of Trust also states that the Lender shall be entitled to possession "whether or not Lender enters upon or takes control of the Properly." Deed of Trust p. 43, § 21.1.

When these clauses are considered in the context of determining intent it is clear that the Lender and Debtor intended to create and did create an absolute assignment of the rents collected from the Property.  While Debtor did have a revocable license to collect rents for the benefit of the Lender, that license was revoked prior to the Petition Date as a result of Debtor's default.  Debtor did not have any interest in the rents from the Property prior to the Petition Date.  Therefore, no interest in the rents passed to Debtor's estate and Debtor cannot properly use the rents as cash collateral.

### IV. Conclusion

As discussed above, the documents executed in connection with the Pre-Petition Loan created an absolute assignment of the rents from the Property.  Because the rents have been absolutely assigned to the Lender prior to the Petition Date, Debtor did not have an interest in the rents as of the Petition Date.  For these reasons and the reasons discussed above the rents cannot be used as cash collateral.  It is therefore:

**ORDERED** that the Motion is **DENIED** to the extent it seeks to use the rent from occupancy of the Property as cash collateral.

### ### END OF ORDER ##